**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                )
DOMINIQUE FINCH,                )
                                )
            Petitioner,         )
                                )
v.                              )    Criminal Action
                                )    No. 18-10006-PBS
UNITED STATES OF AMERICA,       )
                                )
            Respondent.         )
_____)
```

**MEMORANDUM AND ORDER**

April 30, 2020

Saris, D.J.

**INTRODUCTION**

Pro se petitioner Dominique Finch moves under 28 U.S.C. § 2255 to vacate his sentence imposed following a guilty plea to charges of (1) conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846; and (2) possession with intent to distribute and distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1). Finch asserts he received ineffective assistance of counsel. After a review of the record, the Court **DENIES** the motion (Docket No. 106).

**BACKGROUND**

**I.   Investigation**

This case arises from an investigation into a gun and narcotics trafficking operation in and around the Mildred C.

1

Hailey Apartment Complex, a public housing facility in Boston. Law enforcement used cooperating witnesses ("CWs") to make several videotaped firearms and narcotics purchases, including from Finch and his brother, James Finch.[1]

On July 6, 2016, law enforcement instructed a CW to contact Finch to attempt a controlled purchase. The CW sent Finch a Facebook message stating, "Yo bro, u think u can get me a 100 piece right now?" to which Finch responded, "of white girl?"[2] Docket No. 103 at 12:15–23. Finch confirmed he could and set a meeting place at the park inside the apartment complex.

Around 4PM, the CW arrived at the park equipped with an audio-video recorder, transmitter, and $100 in government funds. The CW asked a group of men sitting near the playground equipment about Finch's whereabouts. One of the men, James Finch, responded that Finch would soon return. Finch arrived at the park soon thereafter and the CW approached him. Finch pointed towards a building in the direction from which he came, and the CW walked over. James Finch followed the CW into the lobby and sold him a plastic bag of suspected crack cocaine for one hundred dollars. Following the transaction, the CW returned to law enforcement agents and turned over the recording

---

[1] For clarity, the Court refers to the defendant as "Finch" and to his brother, James Finch, by his full name.
[2] "White girl" is understood by law enforcement to mean cocaine. Docket No. 112 at 2 n.2.

equipment and the plastic bag of narcotics. The bag was later confirmed by the Drug Enforcement Administration to contain 2.49 grams of cocaine base.

Finch and James Finch were indicted on January 3, 2018 for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (Count 1); and possession with intent to distribute and distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 2).

## II. **Plea and Sentencing**

### A.   **Rule 11 Hearing**

On October 4, 2018, the Court held a change of plea hearing pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). In response to the Court's questions, Finch answered that he was satisfied with his lawyer, that his lawyer did not pressure him into pleading guilty, that he had not been threatened in any way, and that he understood he was pleading guilty without a plea agreement.

The government explained that it would recommend a sentence at the low end of the career offender Guideline range and acknowledged that there were valid grounds for a variance. The government argued that the Guideline range started at 188 months because he qualified as a career offender. Defense counsel pointed out he had unsuccessfully brought motions to vacate two

state court guilty pleas because Finch had not been informed of the collateral consequences of pleading guilty.

During the colloquy, the Court reviewed the rights that Finch would give up by pleading guilty, and Finch stated each time that he understood. Finch proceeded to plead guilty to both counts, which the Court accepted after the colloquy as knowing, voluntary, and supported by an independent basis in fact concerning each of the essential elements.

### C.    Presentence Investigation Report

In preparation for sentencing, U.S. Probation and Pretrial Services produced a presentence investigation report ("PSR") about Finch. Probation calculated Finch's total offense level as 31 with a criminal history of VI, resulting in a designation as a career offender and a Guideline range of 188 to 235 months, six years of supervised release, and a $30,000 to $3 million fine range.

### D.    Sentencing Hearing

At sentencing on January 9, 2019, Finch did not object to any facts contained in the PSR, nor the Guideline range. The government noted it lacked authority to recommend a sentence under the Guideline range, but acknowledged that variance was appropriate. Defense counsel recommended a sentence of 21 months followed by three years of supervised release. The government pointed out that a 21-month sentence was 84% under the career

4

offender Guideline range, which it believed to be too great a variance.

After hearing from the Defendant, the Court varied down from the career offender Guideline range of 188 to 235 months and imposed a sentence of six years (72 months), followed by six years of supervised release. In imposing the sentence, the Court noted mitigating factors such as the small quantity of drugs involved in the transaction, Finch's childhood history, alcohol and substance abuse, and family situation as mitigating factors. The Court also focused on the "violent history" of Finch's past convictions, including armed robbery.

## DISCUSSION

### I.   Standard of Review

A federal criminal defendant may petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255(a)

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). The defendant "bears the burden of proof," Lassend v. United States, 898 F.3d 115, 122 (1st Cir. 2018), but "pro se habeas petitions normally should be construed liberally in petitioner's favor," United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm," and the defendant bears "a heavy burden . . . to demonstrate that [one] is warranted." Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003). The court need not hold an evidentiary hearing if the petition "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Id. (quoting United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978)). Because the record here demonstrates that Finch's claim lacks merit, the Court declines to hold an evidentiary hearing.

In support of his § 2255 petition, Finch raises a litany of claims. Most are conclusory. Among other things, he argues that counsel harbored a conflict of interest, that the career offender sentencing Guidelines are unconstitutionally vague, and that the sentencing disparity between crack and powder cocaine offenses is unconstitutional. The Court considers these arguments in turn.

## II.   Ineffective Assistance of Counsel

### a. Legal Standard

"A claim of ineffective assistance of counsel . . . may be raised by means of a section 2255 motion." Rivera-Rivera v. United States, 844 F.3d 367, 372 (1st Cir. 2016). The defendant bears the burden of establishing his entitlement to relief by a

preponderance of the evidence. Garuti v. Roden, 733 F.3d 18, 25

(1st Cir. 2013).

> In the context of a guilty plea, a successful
> ineffective assistance of counsel claim requires a
> defendant to show that (1) 'counsel's representation
> fell below an objective standard of reasonableness,' and
> (2) 'there is a reasonable probability that, but for
> counsel's errors [the defendant] would not have pleaded
> guilty and would have insisted on going to trial.'

United States v. Luis Rivera-Cruz, 878 F.3d 404, 410 (1st Cir.

2017) (quoting Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985)).

Under the performance prong, a defendant must demonstrate

that, "given the facts known at the time, counsel's choice was

so patently unreasonable that no competent attorney would have

made it." Rivera v. Thompson, 879 F.3d 7, 12 (1st Cir. 2018)

(quoting Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)).

This analysis requires "evaluating the attorney's conduct 'from

counsel's perspective at the time' and in light of 'prevailing

professional norms'" Id. (quoting Strickland v. Washington, 466

U.S. 668, 688-89 (1984)). Review of counsel's performance is

"highly deferential." Strickland, 466 U.S. at 689. While the

Constitution ensures a defendant reasonable representation, it

"does not guarantee a defendant a letter-perfect defense or a

successful defense." United States v. Natanel, 938 F.2d 302, 309

(1st Cir. 1991). A defendant faces an especially high burden in

challenging counsel's tactical decisions. See Lucien v. Spencer,

871 F.3d 117, 129 (1st Cir. 2017).

The prejudice prong requires the defendant to establish a "reasonable probability" he would not have pleaded guilty but for counsel's errors. Luis Rivera-Cruz, 878 F.3d at 410. Reasonable probability means "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). In undertaking this prejudice analysis, courts do not rely solely on a defendant's "post hoc assertions . . . about how he would have pleaded but for his attorney's deficiencies." Lee v. United States, 137 S. Ct. 1958, 1967 (2017). Rather, they "look to contemporaneous evidence to substantiate [his] expressed preferences." Id. "[W]hen the defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error," he must also show that he "would have been better off going to trial." Id. at 1965.

### b. Analysis

Specifically with respect to his ineffective assistance of counsel claim, Finch argues that his attorney performed deficiently by (1) failing to adequately investigate; (2) failing to challenge Finch's indictment; (3) failing to challenge the quantity and quality of the drugs at issue; (4) failing to protect Finch from career offender status at sentencing; (5) concealing possibly exculpatory evidence; (6) failing to argue that a conspiracy cannot exist between a

defendant and a CW; and (7) forcing Finch to plead guilty.[3] These arguments are largely undeveloped and lack factual basis.

### i. Failure to adequately investigate

First, Finch argues that defense counsel was ineffective for "fail[ing] to adequately investigate [Finch's] case, interview witnesses, review the crime scene[,] talk to alibi witnesses," raise sufficiency of the evidence arguments, and "challenge relevant conduct of [Finch's] participation" in the alleged conspiracy. Docket No. 106 at 2. Finch does not, however, provide his alibi or possible alibi witnesses in his petition or point to any areas where evidence was insufficient to place him in the conspiracy. As an initial matter, without specific facts supporting his claim, these assertions "amount to mere 'bald' assertions without sufficiently particular and supportive allegations of fact." Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992) (quoting Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974)).

---

[3] Finch also argues that counsel was ineffective for failing to protect Finch against conviction and due to cumulative errors that prejudiced Finch's "opportunity at a fair result." Docket No. 106 at 2-4. These claims do not allege specific facts independent of Finch's other claims. While "Strickland clearly allows the court to consider the cumulative effect of counsel's errors in determining whether a defendant was prejudiced," Dugas v. Coplan, 428 F.3d 317, 335 (1st Cir. 2005), here, counsel here did not commit any "errors" within the meaning of Strickland so the appeal to "cumulative errors" lacks basis.

Further, any decision by counsel to not investigate a particular area is subject to "a heavy measure of deference." Strickland, 466 U.S. at 691. Defense counsel states in his sworn affidavit that he could not identify "other relevant witnesses in the case" and that "Mr. Finch offered up no alibi to the incident recorded on video in his apartment building." Docket No. 112-1 at 2. Critically, "[c]ounsel's actions are usually based . . . on information supplied by the defendant." Strickland, 466 U.S. at 691. Here, it was reasonable for counsel to conclude from the audio and video evidence provided by the government and Finch's lack of alibi theory that time and resources would have been better spent pursuing other strategies. See Bucci v. United States, 662 F.3d 18, 31 (1st Cir. 2011) ("[T]he Strickland standard for ineffective assistance 'reflects the reality that lawyers do not enjoy the benefit of endless time, energy or financial resources.'") (quoting Rogers v. Zant, 13 F.3d 384, 387 (11th Cir. 1994)). The showing of deficient performance thus has not been reached.

Even assuming defense counsel deficiently failed to fully investigate, nothing suggests a "reasonable probability" that further investigation would have uncovered evidence that would have prompted Finch to go to trial rather than plead guilty. Finch cannot carry his burden on his ineffective assistance of counsel claim based on a failure to investigate.

### ii. Failure to challenge indictment

Next, Finch argues that defense counsel was ineffective in failing to challenge Finch's indictment on the grounds of (1) lack of probable cause, (2) defects within the indictment, and (3) an unconstitutional racial composition of the grand jury. Each of these grounds is without merit.

First, after the grand jury found probable cause to indict Finch on January 3, 2018 (Docket No. 3), that finding cannot be challenged or subjected to "any review, oversight, or second-guessing." See Kaley v. United States, 571 U.S. 320, 328 (2014). It was reasonable for counsel not to challenge the indictment on probable cause grounds, as any challenge would have been futile.

Second, with respect to counsel's failure to challenge defects in the indictment, Finch does not identify any defects which could have been be challenged, such as failure to state an offense. See United States v. Brissette, 919 F.3d 670, 675 (1st Cir. 2019). Nor can the Court identify any.

Third, with respect to counsel's failure to challenge the indictment on the basis of the grand jury's unconstitutional racial composition, Finch neither posits what the racial composition of the grand jury was nor alleges that any juror was excluded from the grand jury based on race. There is no reason to believe that counsel's failure to challenge the grand jury's racial composition was unreasonable or prejudicial.

> ### *iii. Failure to challenge the quantity and quality of drugs at issue*

Finch argues that defense counsel was ineffective in failing to challenge the quantity and quality of drugs attributed to him. But Finch does not allege that the bag of drugs purchased in the controlled buy contained a different substance than cocaine base, or that it contained less than 2.49 grams of drugs. There is also no reason to believe that the laboratory analysis was inaccurate. Defense counsel notes in his sworn affidavit that "[t]here was no disputes among any of the parties, including Mr. Finch, about the weight or content of the drugs seized and tested." Docket No. 112-2 at 2.

Furthermore, asserting a smaller quantity of drugs would not have made a difference to Finch's base offense level. See U.S.S.G. § 2D1.1(c)(14) (establishing a base offense level of 12 for less than 2.8 grams of cocaine base). Upon review of the record, the Court concludes that counsel's decision not to challenge the quantity or quality of the drugs certified was neither unreasonable nor prejudicial.

> ### *iv. Failure to prevent career offender sentence*

Finch alleges that defense counsel "failed to protect [Finch] against possible Career Criminal application to his sentence by not recognizing the possibility could have caused serious [irreparable] harm." Docket No. 106 at 4. But there is

ample evidence that defense counsel both recognized the harm of

a career offender designation and endeavored to prevent Finch

for being considered as such.

First, at the Rule 11 hearing, defense counsel noted

Finch's intention to dispute his career offender status and

defense counsel's efforts to vacate the guilty pleas in two

predicate offenses:

> THE COURT: Do you know, is [the career offender status]
> going to be in dispute, or is it mostly going to be a
> question about a variance? Do you know, Mr. Davenport?
>
> MR. DAVENPORT: Your Honor, it's currently in dispute.
> Two of the District Court cases never informed him of
> his collateral consequences, and it's something that the
> state court now does.
>
> THE COURT: Like in the -- well, he's not an immigrant,
> so what would it be, like –
>
> MR. DAVENPORT: Collateral consequences of like an
> additional criminal act or federal career offender.
>
> THE COURT: Oh, I see.
>
> MR. DAVENPORT: And they always do that now in the state
> court, so I've actually brought two motions to vacate
> the guilty pleas based on that. I've gotten one of them
> back, and it was denied. One of them is still pending.
> Even if they both fail, then my position would be to
> argue that variance is appropriate in this case, your
> Honor.
>
> THE COURT: All right. So apparently we're going to have
> a debate at sentencing about this, but do you understand
> that that is something I'm making no promises about?
>
> THE DEFENDANT: Yes.

Docket No. 103 at 9-10. Defense counsel states in his sworn affidavit that he "appeared numerous times over several months in Dorchester District Court and South Boston District Court in an effort to vacate [Finch's] guilty pleas." Docket No. 112-1 at 1. Although those attempts were unsuccessful, counsel's efforts to nullify those predicate offenses were reasonable.

Second, even once efforts to vacate Finch's guilty pleas in the predicate offenses proved unsuccessful, defense counsel argued vigorously for the Court to impose a lenient sentence below the career offender guidelines and requested a sentence of 21 months imprisonment followed by three years of supervised release. In support of this request, defense counsel argued, among others, that (1) one of Finch's predicate offenses, the sale of an ounce of marijuana, was minor and should not alone elevate Finch to career offender status; (2) the Court should consider mitigating factors like Finch's childhood history and family conditions; and (3) the Court should follow other District of Massachusetts cases where career offender defendants received lower sentences than the Guidelines suggested. Counsel's continued advocacy at hearings and in memoranda to the Court cannot be considered deficient performance.

And finally, while defense counsel was ultimately unsuccessful in persuading the Court to sentence within the 21 to 27 month non-career offender Guideline range, Finch received a

significant variance from the career offender Guidelines. The 72-month sentence imposed was a more than 60% reduction from the 188 to 235 range for career offenders at the relevant offense level and criminal history category. Finch does not explain what more counsel could have done to secure a lower sentence.

Based on the foregoing evidence, the Court cannot conclude that "counsel's performance was objectively unreasonable under prevailing professional norms." Walker v. Medeiros, 911 F.3d 629, 633 (1st Cir. 2018) (quoting United States v. Mercedes-De La Cruz, 787 F.3d 61, 67 (1st Cir. 2015)). Nor is there reason to believe that Finch was prejudiced by any deficiency, especially in light of the variance he received. Though Finch would have preferred a lighter sentence, counsel is not ineffective merely because he is unsuccessful in achieving the entirety of his client's goals.

*v. Alleged concealment of exculpatory evidence*

Finch alleges that defense counsel concealed exculpatory evidence and alludes to Brady v. Maryland, 373 U.S. 83 (1963). Pursuant to Brady, "[a] defendant's right to due process is violated when the prosecution suppresses evidence that is both favorable to the accused and material either to guilt or innocence." DeCologero v. United States, 802 F.3d 155, 161 (1st Cir. 2015) (quoting Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003)). Evidence is "material" where there is

"a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. (quoting Kyles v. Whitley, 514 U.S. 419, 433 (1995)).

Finch's conclusory allegations do not meet his burden. He "offers no suggestion as to what this purported evidence might be, or where it might be found, and as such, [the Court] find[s] that he cannot show that '[t]he evidence at issue [is] favorable to the accused . . . or that 'the evidence [has] been suppressed.'" Owens v. United States, 483 F.3d 48, 68 (1st Cir. 2007), abrogated on other grounds by Weaver v. Massachusetts, 137 S. Ct. 1899 (2017) (quoting Strickler v. Greene, 527 U.S. 263, 281–82 (1999)). There is no evidence that either defense counsel or the government concealed exculpatory evidence here, and Finch does not elaborate on what sort of exculpatory evidence there may have been.

### vi. Failure to argue that a conspiracy cannot exist between a defendant and a CW

In reviewing Finch's claim that defense counsel performed deficiently in "fail[ing] to interject the Sears Rule in Conjunction with [conspiracy] by government informant who became a government agent [as] there can [exist] no conspiracy between cooperating party," Docket No. 106 at 7, the Court assumes this argument to refer to Sears v. United States, 343 F.2d 139 (5th

Cir. 1965). There, the Fifth Circuit noted that "there can be no
indictable conspiracy with a government informer who secretly
intends to frustrate the conspiracy." Sears, 343 F.2d at 142.

Finch is correct in that "[i]t is axiomatic that a
conspiracy cannot continue without at least two genuine parties
to the agreement." United States v. Portela, 167 F.3d 687, 700
(1st Cir. 1999). Government agents cannot qualify as co-
conspirators, but that rule "has relevance only in situations
where the conspiracy involves only one defendant and a
government informer." Id. at 700 n.8 (quoting United States v.
Giry, 818 F.2d 120, 126 (1st Cir. 1987)). Here, that rule is
inapposite. Finch was not indicted for conspiracy to distribute
drugs with the CW —- he was indicted for conspiracy to
distribute drugs with his co-defendant, James Finch. Because
objecting to Finch's conspiracy indictment based on the CW's
role in the controlled purchase would have led nowhere, failing
to do so was neither deficient nor prejudicial.

> vii. Forcing Finch to plead guilty

Finch alleges in his § 2255 petition that defense counsel
told him to plead guilty and that Finch was "more or less forced
to take this involuntary plea." Docket No. 106 at 5; see also

id. ("[T]he induced guilty plea should be rendered involuntary.").[4] Without substantiation, this argument fails.

First, Finch "has given no valid reasons why he should be relieved of his statements" at the Rule 11 hearing. United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984). At the hearing, Finch answered that he was satisfied with his lawyer and that he was neither pressured into pleading guilty nor threatened in any way. After the government gave its account of the case, Finch answered that he did not disagree with any of the facts recounted. He admitted to being involved in the conspiracy to sell crack cocaine. He further testified that his plea was made knowingly, freely, and voluntarily. These admissions are "entitled to significant (albeit not dispositive) weight when, as now, he seeks to vacate that plea through a collateral attack." Wilkins v. United States, 754 F.3d 24, 30 (1st Cir. 2014). And those admission are "especially compelling because the petitioner neither attempts to explain it away nor makes any assertion of factual innocence." Id.

Second, Finch provides no evidence or elaboration of any way defense counsel pressured Finch into pleading guilty. Other than his conclusory allegations, Finch does not allege any facts

---

[4] Consistent with this involuntary plea argument, Finch further claims that the Court "threatened the maximum sentence if the plea was not agreed upon by defense counsel and client." Docket No. 106 at 6. This allegation is not supported by the record.

which make the plea involuntary, such as having been deprived of relevant information at the time of his plea or having not understood the consequences of pleading guilty. See Ferrara v. United States, 456 F.3d 278, 289 (1st Cir. 2006); see also Correale v. United States, 479 F.2d 944, 947 n.3 (1st Cir. 1973) (discussing ways that prosecutorial misconduct might render a plea involuntary). Without evidence to rebut defense counsel's statement that he "never told Mr. Finch 'to take a plea,' but explained the options available to him and the government's evidence against him in order to enable him to make an informed decision on that matter on his own," Docket No. 112-1 at 2, Finch's argument cannot hold sway.

Third, where "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill, 474 U.S. at 58-59 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). In light of Finch's failure to identify any valid deficiencies by counsel, the Court cannot find that Finch would have chosen not to plead guilty but for counsel's actions.

In sum, there is no indication that defense counsel violated "prevailing professional norms" or that Finch would have opted to go to trial but for counsel's deficiencies. See

Rivera, 879 F.3d at 12 (quoting Strickland, 466 U.S. at 688-89).

As a result, Finch's ineffective assistance of counsel claims do

not clear the hurdle required to grant relief.

### III. Alleged Conflict of Interest

Finch next argues that defense counsel harbored a conflict

of interest that resulted in counsel's failure to adversely

challenge the government's case. If a defendant demonstrates

that defense counsel "'actively represented conflicting

interests' in breach of the attorney's duty of loyalty, and if

the defendant can show that this 'actual' conflict of interest

'adversely affected [the] lawyer's performance,' then the

stricter prejudice showing required by Strickland does not

apply." Teti v. Bender, 507 F.3d 50, 55 (1st Cir. 2007) (quoting

Strickland, 466 U.S. at 692).

Where, as here, an alleged conflict of interest does not

stem from codefendant representation, a defendant must show an

"actual conflict," which requires more than "a 'mere theoretical

division of loyalties.'" Yeboah-Sefah v. Ficco, 556 F.3d 53, 73

(1st Cir. 2009) (quoting Mickens v. Taylor, 535 U.S. 162, 171

(2002)). "To establish an actual conflict of interest, a

'defendant must show that (1) the attorney could have pursued a

plausible alternative defense strategy, and (2) the alternative

strategy was inherently in conflict with or not undertaken due

to the attorney's other interests or loyalties.'" United States

v. Cardona-Vicenty, 842 F.3d 766, 772–73 (1st Cir. 2016)

(quoting Familia–Consoro v. United States, 160 F.3d 761, 764

(1st Cir. 1998)).

Notwithstanding Finch's accusations of a conflict, defense

counsel states in his affidavit that he "[was] not aware of any

conflicts of interest in [his] representation of Mr. Finch."

Docket No. 112-1 at 2. Nor does Finch provide any evidentiary

support for this claim or make specific allegations about

alternative strategies that defense counsel would have or should

have taken but for the conflict.

The unsubstantiated argument that defense counsel harbored

a conflict of interest thus has no merit.

## IV.  USSG § 4B1.1 Career Offender Sentencing Enhancement

In his reply to the government's opposition to his § 2255

petition, Finch argues that his career offender sentencing

enhancement was invalid in light of United States v. Davis, 139

S. Ct. 2319 (2019), Sessions v. Dimaya, 138 S. Ct. 1204 (2018),

and Johnson v. United States, 135 S. Ct. 2551 (2015). This

argument is based on a misunderstanding of the law.

In each of the cases Finch cites, the Supreme Court

invalidated as unconstitutionally vague the residual clause in a

definition of violence. See United States v. Davis, 139 S. Ct.

2319, 2324 (2019) (invalidating as unconstitutionally vague the

residual clause in the Hobbs Act's definition of "violent

felony"); <u>Sessions v. Dimaya</u>, 138 S. Ct. 1204, 1216 (2018)

(invalidating as unconstitutionally vague the residual clause in

the Immigration and Nationality Act's definition of "crime of

violence"); <u>Johnson v. United States</u>, 135 S. Ct. 2551, 2563

(2015) (invalidating as unconstitutionally vague the residual

clause in the Armed Career Criminal Act's definition of "violent

felony").

These void for vagueness cases do not support Finch's

petition. The Supreme Court has clarified that the career

offender sentencing guidelines are not subject to the same

vagueness challenges as the prior cases in light of the

Guidelines' advisory nature. <u>See Beckles v. United States</u>, 137

S. Ct. 886 (2017). The Court explained that because "the

advisory Guidelines do not fix the permissible range of

sentences," they "do not implicate the twin concerns underlying

vagueness doctrine —— providing notice and preventing arbitrary

enforcement" <u>Id.</u> at 892, 894.

## V.   <u>Sentencing Disparity in Crack and Cocaine Penalties</u>

Finally, Finch alludes to unconstitutionality in the

sentencing disparities between crack and powder cocaine

offenses. Currently, the crack-to-powder sentencing ratio is 18-

to-1. <u>Dorsey v. United States</u>, 567 U.S. 260, 269 (2012). But

even when the disparity was 100-to-1, the First Circuit "upheld

the sentencing distinction between crack and powder cocaine

against both due process and equal protection challenges."
United States v. Garcia-Carrasquillo, 483 F.3d 124, 134 (1st
Cir. 2007) (citing United States v. Singleterry, 29 F.3d 733,
740-41 (1st Cir. 1994)); see also United States v. Robinson, 405
F. App'x 72, 73 (7th Cir. 2010) (collecting cases). And
notwithstanding the disparity, the Supreme Court has indicated
that the appropriate remedy for excessively harsh Guideline
sentence ranges is a variance from the advisory range by the
sentencing court. See Spears v. United States, 555 U.S. 261, 266
(2009); Kimbrough v. United States, 552 U.S. 85, 91 (2007).

In imposing a variance from the Guideline range, the Court
stated that one reason for its significant downward variance
from the Guideline range was a policy disagreement with the
Guidelines pursuant to Kimbrough v. United States, 552 U.S. 85
(2007). Specifically, the Court wrote:

> The career offender guideline provides a sentence that
> is disproportionate to the severity of the offense. It
> provides for a low end guideline sentence of 188 months
> (in contrast to a range of 21-27 months) for the sale of
> 2.5 grams of crack. One of the two predicates was the
> distribution of a small amount of marijuana.

Docket No. 99 at 3. In light of the substantial variance he
received, Finch cannot base his challenge on the Guideline
range.

## **ORDER**

For the reasons stated above, Finch's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Docket No. 106) is **DENIED**.


SO ORDERED.


/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge